UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                        :

UMB BANK N.A.,                     :

                                  :

               Plaintiff,         :

                                  :       21-CV-4897 (JMF)

       -v-                    :

                                  :      MEMORANDUM OPINION

BRISTOL-MYERS SQUIBB COMPANY,     :        AND ORDER

              Defendant.     :

                                  :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This is a contract dispute arising out of the November 2019 acquisition by Bristol-Myers

Squibb Company ("BMS") of Celgene Corporation ("Celgene"). ECF No. 1 ("Compl."), ¶ 2. In

connection with the acquisition, BMS issued to Celgene stockholders contingent value rights, or

CVRs, which would have value only if marketing applications for three of Celgene's most

valuable products were approved by the Food and Drug Administration ("FDA") by specified

milestone dates. *Id.* ¶ 29. If FDA approval of a product came even a day late, the CVR

Agreement would automatically terminate and the CVRs rendered worthless. Compl. ¶ 32; *see*

ECF No. 1-1 ("CVR Agreement").[1] The Complaint alleges that BMS, in order to avoid paying

holders of the CVRs the $6.4 billion they otherwise would have been due, slowed down the

approval process for one therapy, Liso-cel, causing it to be approved thirty-six days after the

relevant milestone. Compl. ¶¶ 7, 9, 17. Plaintiff UMB Bank N.A., which serves as Trustee

under the CVR Agreement, sued on behalf of the CVR holders, alleging that BMS had breached

---

[1]     The Court may consider the CVR Agreement in connection with BMS's motion to dismiss because it was attached to, and incorporated by reference in, the Complaint. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

the CVR Agreement by failing to use "Diligent Efforts" to get Liso-cel approved on time and by

not making its books and records available for inspection upon request on December 29, 2020, as

required by the contract.  *Id.* ¶¶ 34-35, 85-86.   BMS now moves, pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure, to dismiss the Complaint, arguing principally that Plaintiff

failed to comply with certain pre-suit notice procedures requiring notice of an alleged breach and

a ninety-day period to cure the breach before filing suit.  *See* ECF No. 18 ("Def.'s Mem.").  The

Court disagrees and, for the reasons that follow, DENIES BMS's motion to dismiss.

      The CVR Agreement directs Plaintiff, the Trustee, to "bring suit to protect the rights of

the Holders" if "an Event of Default . . . occurs and is continuing."  CVR Agreement § 8.1.  An

Event of Default is defined, in turn, as a "material default in the performance, or breach in any

material respect, of any covenant or warranty of the Company in respect to the Securities . . . ,

and continuance of such default or breach for a period of ninety (90) days" after notice is

provided to the Company.  CVR Agreement § 8.1(b).  On March 4, 2021, about three months

after the CVR Agreement automatically terminated, Plaintiff sent a notice of default to BMS,

Compl. ¶ 101, alleging that BMS had breached the contract by failing to: "use Diligent Efforts to

achieve the Milestone[s]," CVR Agreement § 7.8; keep accurate and detailed records to allow

Plaintiff to "determine if the Company has complied with its obligations," *id.* § 7.5; and permit

Plaintiff to "examine the pertinent books and records . . . as may be reasonably necessary," *id.* §

4.2(f).  Plaintiff waited ninety days, until June 3, 2021, and then filed this suit.  *See* Compl.

      BMS argues principally that Plaintiff's suit must be dismissed because the notice of

default was sent after the CVR Agreement had terminated, meaning that the default could not

have "continued" for ninety days.  Def.'s Mem. 17.  That argument falls short.  For starters, the

CVR Agreement explicitly provides that Article 8, which empowers Plaintiff to bring suit, "shall

survive termination of this CVR Agreement" and that "the termination of this CVR Agreement

shall not relieve any Party of any liability arising from any material breach of its obligations

under this CVR Agreement occurring prior to the Termination Date."  CVR Agreement § 1.16;

*see, e.g.*, *Mtivity, Inc. v. Off. Depot, Inc.*, 525 F. Supp. 3d 433, 439-40 (E.D.N.Y. 2021) (holding

that "termination pursuant to a termination clause is usually treated as alternative performance"

and that "certain clauses of the Agreement [that] are intended to endure . . . would not be

affected by termination pursuant to the mutual termination clause").  BMS argues that these

provisions are irrelevant because its default could not "continue" for ninety days due to the

termination of the contract, such that the alleged breach never matured into "an Event of

Default" that would allow Plaintiff to file suit.  *See* Def.'s Mem. 15.  But, as this Court recently

held in similar circumstances, "[a] party is in default when it fails to perform its contractual

obligations.  Ordinarily, termination of an agreement does not change that state of affairs; the

terminated party remains liable for the breach."  *New York Wheel Owner LLC v. Mammoet

Holding B.V.*, 481 F. Supp. 3d 216, 237 (S.D.N.Y. 2020).  Accordingly, the requirement that the

breach must continue for ninety days "is more reasonably read to prohibit a demand based on a

breach that [the company] has cured."  *Id.*  BMS cites no authority to support the proposition that

a breach of a contract cannot, as a matter of law, "continue" after termination of the contract.

Instead, the cases it cites for this proposition, *see* Def.'s Mem. 15, establish only that a contract

that has long since terminated cannot be breached, *see, e.g.*, *Int'l Techs. Mktg., Inc. v. Verint

Sys., Ltd.*, 157 F. Supp. 3d 352, 357, 363 (S.D.N.Y. 2016), *aff'd*, 850 F. App'x 38 (2d Cir. 2021).

Here, by contrast, the alleged breach undeniably occurred during the pendency of the contract.

    Next, BMS argues that it would be unfair and counter to the parties' expectations to allow

a suit in these circumstances because, practically speaking, BMS was unable to use the ninety-

day notice period to cure the breach by, for example, using diligent efforts to meet the milestone.

*See* Def.'s Mem. 16.  But the contract does not require that the breach be amenable to cure in the

ninety-day notice period; indeed, the word "cure" appears nowhere in the provision.  Instead, the

agreement merely requires "continuance of such default or breach for a period of ninety (90)

days after" notice, CVR Agreement § 8.1(b), and here the alleged default remained unremedied

ninety days after notice.  In any event, as the Court held in *New York Wheel*, 481 F. Supp. 3d at

237, there are alternative ways to remedy a default, including, in this case, payment of damages

or reinstatement of the CVR Agreement, *see* ECF No. 24 ("Pl.'s Opp'n"), at 18.  Finally, as

Plaintiff persuasively notes, a contrary reading of the parties' agreement would produce the

perverse result of immunizing any breaches by BMS within the final ninety days of the contract.

*See* Pl.'s Opp'n 17-18.  In short, Plaintiff has the better reading of the relevant contractual

language.  At a minimum, the relevant provisions of the CVR Agreement, taken together, are

ambiguous, which is enough to deny BMS's motion.  *See, e.g.*, *Orchard Hill Master Fund Ltd. v.*

*SBA Commc'ns Corp.*, 830 F.3d 152, 156-57 (2d Cir. 2016); *see also Mahoney v. Sony Music*

*Ent.*, No. 12-CV-5045 (RJS), 2013 WL 491526, at *7 (S.D.N.Y. Feb. 11, 2013) ("Where, as

here, the notice requirement is a condition precedent not to forfeiture or termination, but rather to

bringing an action . . . , the notice at issue should be examined from a more relaxed perspective."

(internal quotation marks omitted)).

BMS argues that Plaintiff's claim based on breach of the books-and-records provision

should be dismissed for two additional reasons: because Plaintiff's demand was received only

two days before the contract terminated, which did not give BMS enough time to respond, and

because the damages Plaintiff seeks "are not legally cognizable."  Def.s Mem. 19-20.  But these

arguments also fall short.  First, whether providing the books and records under the

4

circumstances would have "unreasonably interfere[d]" with BMS's "normal business

operations," CVR Agreement § 4.2(f), or otherwise have been impractical turn on factual issues

that cannot be resolved on a motion to dismiss, *see, e.g.*, *Kelly-Brown v. Winfrey*, 717 F.3d 295,

313 (2d Cir. 2013).  Second, the Complaint alleges that because BMS failed to provide the

requested books and records, Plaintiff "has incurred expenses to engage in an investigation that

would have been obviated or reduced in scope had [BMS] complied with its obligations."

Compl. ¶ 104.  At this stage of the dispute, that allegation is sufficient because, "[a]lthough a

plaintiff must plead factual content that allow the court to draw the reasonable inference that he

suffered damages as a result of the breach, it need not, at this stage, specify the measure of

damages nor plead specific proof of causation." *Errant Gene Therapeutics, LLC v. Sloan-

Kettering Inst. for Cancer Rsch.*, No. 15-CV-2044 (AJN), 2016 WL 205445, at *7 (S.D.N.Y.

Jan. 15, 2016) (cleaned up) (internal quotation marks and citations omitted).

For the foregoing reasons, BMS's motion to dismiss the Complaint is DENIED.  BMS

shall answer the Complaint within fourteen days of the date of this Memorandum Opinion and

Order.  *See* Fed. R. Civ. P. 12(a)(4)(A).  Additionally, all parties shall appear for an initial

pretrial conference with the Court on **July 26, 2022**, at **3:30 p.m**.  The conference will be held

remotely by telephone in accordance with Rule 2(B) of the Court's Individual Rules and

Practices in Civil Cases, available at https://nysd.uscourts.gov/hon-jesse-m-furman.  Counsel

should review and comply with the rules regarding teleconferences in the Court's Individual

Rules and Practices in Civil Cases, including Rule 2(B)(i), which requires the parties, **no later**

**than 24 hours before the conference**, to send a joint email to the Court with a list of counsel

who may speak during the teleconference and the telephone numbers from which counsel expect

to join the call.  After receiving that email, the Court will provide the parties with the call-in

information for counsel with speaking roles.  All others — counsel who will not have speaking roles and members of the public — may listen to the conference by calling the Court's dedicated conference call line at (888) 363-4749 and using access code 542-1540 followed by the pound (#) key.  In addition, the parties must submit a proposed case management plan and joint letter, the contents of which are described in the Court's Order of June 3, 2021, *see* ECF No. 6, by no later than the **Thursday of the week prior to the initial pretrial conference**.

      The Clerk of Court is directed to terminate ECF No. 17.

      SO ORDERED.

Dated: June 24, 2022
      New York, New York

                    JESSE M. FURMAN
              United States District Judge

6