

**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
**T** 212.335.4500
**F** 212.335.4501
**W** www.dlapiper.com

JOHN J. CLARKE, JR.
john.clarke@us.dlapiper.com
**T** 212.335.4920

December 13, 2023

_By ECF_

Hon. Jesse M. Furman
United States District Court for the
 Southern District of New York
40 Foley Square
New York, New York 10007

Re:    UMB Bank, N.A. v. Bristol-Myers Squibb Company, No. 21 Civ. 4897 (JMF)

Dear Judge Furman:

On behalf of defendant Bristol-Myers Squibb Company ("BMS"), I am writing in response to the letter motion filed on Friday evening by plaintiff UMB Bank, N.A. ("UMB"). In the motion, UMB seeks an order compelling production by BMS of communications between BMS and Equiniti Trust Company ("Equiniti") that have been withheld or redacted based on the common interest doctrine. [ECF No. 64]. UMB's motion to compel should be denied.

UMB is unclear about which documents it is seeking to obtain through this motion. It contends that it seeks to compel production of "more than 79 communications" between BMS and Equiniti but does not provide any information about when those communications occurred or what they were about. Although BMS and UMB did confer and reach impasse on the question whether BMS and Equiniti shared a legal interest sufficient for the common interest doctrine to apply at all, the discussions did not get into the application of the doctrine to specific documents listed in BMS's privilege log or redacted based on the common interest doctrine.

In preparing this response, BMS has determined that (i) a limited number of communications between lawyers for BMS and Equiniti should not have been withheld as privileged or included redactions that needed correction, and (ii) 56 entries on the BMS privilege log need revision to clarify that the relevant documents were withheld as privileged communications involving only BMS and lawyers for BMS (and no Equiniti participants) but were sent in chains following emails with Equiniti that are included elsewhere in the BMS production. BMS has sent a letter to UMB identifying these issues, the further productions it will make to address them, and the revisions it will make to its privilege log to clarify those 56 entries. _See_ Exhibit 1.



Hon. Jesse M. Furman
U.S. District Court, S.D.N.Y.
December 13, 2023
Page 2

The current dispute therefore concerns only 21 withheld or redacted documents. The common interest doctrine applies to them. The parties agree that the common interest doctrine applies only to "shared communications [] in furtherance of a common legal interest in pending or reasonably anticipated litigation." *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 628 (2016). However, "a 'common legal interest need not be identical' but rather exists 'where an interlocking relationship or a limited common purpose necessitates disclosure to certain parties.'" *Homeward Residential, Inc. v. Sand Canyon Corp.*, 2017 WL 4676806, at *10 (S.D.N.Y. Oct. 17, 2017) (quoting *ACE Sec. Corp. v. DB Structured Prod., Inc.*, 55 Misc. 3d 544, 561 (Sup. Ct., N.Y. Cnty. 2016)). Where two parties are "facing common problems in pending or threatened civil litigation[,]" their shared communications with counsel on the issues are shielded from disclosure. *ACE Sec. Corp.*, 55 Misc. 3d at 560 (internal quotations omitted).

At the time of the underlying events, lawyers for BMS and Equiniti acknowledged to one another that those entities had a common interest in possible litigation concerning an ongoing effort by UMB and certain investors in the CVRs to replace Equiniti with UMB as trustee and that they could share privileged communications about that issue without a waiver. On December 18, 2020, UMB delivered an "Instrument of Removal, Appointment and Acceptance" that it described as an act of "Majority Holders" to remove Equiniti as trustee under section 4.10(c) of the CVR Agreement and appoint UMB in its place. The oral understanding of a common interest was discussed in a call sometime after the two companies received the "Instrument." Equiniti confirms that this occurred. *See* <u>Exhibit 2</u>.[1]

All of the remaining 21 documents withheld or redacted by BMS based on the common interest doctrine involved communications between lawyers for the two companies. *See Ambac*, 27 N.Y.3d at 628. The large majority of those communications include iterations of the same December 22, 2020 email exchange between Equiniti's general counsel and a BMS lawyer that UMB already included as an exhibit to its recent letter on standing issues. *See* ECF 65-1. BMS has reviewed the two redactions in that email exchange in preparing this response and stands by its assertion of privilege for those redactions.

UMB ignores important context in suggesting that the common interest doctrine could not apply because Equiniti "was obligated to represent the interests of the <u>CVR holders</u> – not BMS." Motion at 2. Considering whether there ***had not been*** an "act of the Majority Holders" to replace Equiniti as trustee, and litigation that might arise concerning that question, would not conflict with the interests of "the CVR holders." It would protect their interests by ensuring that prohibited actions were not taken at the direction of a minority of CVR owners in violation of protections afforded by the CVR Agreement. *See Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d

---

[1] The motion does not explain the proof that UMB believes to be required to establish that the common interest doctrine applies. In its recent Rule 30(b)(6) deposition, UMB's corporate representative struggled to provide a factual basis for UMB's extensive and undifferentiated assertion of the common interest doctrine to withhold 865 documents and to redact 867 others. The parties are continuing their discussion about UMB's questionable, and unquestionably broad, assertions of a common interest privilege.



Hon. Jesse M. Furman
U.S. District Court, S.D.N.Y.
December 13, 2023
Page 3

549, 565-66 (2014) ("no-action clause" of indenture agreement "ensures that the proceeds of litigation actually prosecuted will be shared ratably by all" holders).

Finally, UMB grasps for a rationale for this motion in asserting that BMS has been "tactical" in asserting the common interest doctrine and has done so "to shield documentary evidence" related to UMB's failure to comply with the CVR Agreement, which deprives this Court of subject matter jurisdiction. Motion at 2. Contrary to UMB's arguments, BMS's knowledge is not relevant to that issue.

UMB now admits that no one ever obtained an omnibus proxy from The Depository Trust Company, as the CVR Agreement expressly required, which UMB brushes off as a "technicality." ECF No. 65 at 1. The admitted failure to comply with "proper procedures . . . to appoint a new trustee," *id.*, deprives this Court of subject matter jurisdiction because UMB is not "the Trustee" under the CVR Agreement and therefore never had *either* the right to assert the breach of contract claims in this case *or* any personal interest in those claims. Compl. ¶ 22 (UMB suing "solely in its capacity as Trustee"). Even UMB's cases hold that this defeats constitutional, not prudential standing. *See Lovati v. Petróleos de Venezuela, S.A.*, 2021 WL 5908953 at *2 (S.D.N.Y. Dec. 14, 2021) (even though they had not obtained DTC authorization to bring suit, beneficial owners had constitutional standing at outset of case because "they alleged a monetary loss, directly traceable to Defendant's alleged breach, redressable by this Court").

The threshold jurisdictional deficiency here cannot be waived, *United States v. Bond,* 762 F.3d 255, 263 (2d Cir. 2014), regardless of what BMS knew, or did not know, in December 2020 about UMB's failure to obtain a DTC proxy. Further, unlike the defendant in *Applestein v. Province of Buenos Aires*, 415 F.3d 242, 244 (2d Cir. 2004), BMS included a defense based on UMB's lack of standing in its answer. ECF No. 35 at 36 ("UMB Bank, N.A. lacks the capacity to sue BMS for breach of the CVR Agreement.").

*          *          *

This motion to compel should not have been filed. BMS correctly withheld or redacted the limited number of communications at issue because the common interest doctrine applies to them. BMS agrees that the Court should review those communications *in camera* if that is necessary to resolve this discovery motion.

<table>
<tr><td>Of Counsel:</td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>DLA PIPER LLP (US)</td></tr>
<tr><td>Jessica A. Masella<br>Steven M. Rosato<br>Jessica P. Wright</td><td>/s/ John J. Clarke, Jr.</td></tr>
<tr><td></td><td>John J. Clarke, Jr.</td></tr>
</table>

UMB's letter motion is denied, substantially for the reasons set forth above.  (To be clear: The Court expresses no views at this time on the parties' dispute about whether BMS should be permitted to file an early summary judgment motion, let alone the merits of any such motion.)  More specifically,

Enclosures

UMB's letter motion to compel is moot as to the documents that have now been produced.  To the extent that BMS continues to withhold 21 documents in whole or in part on the basis of the common interest privilege, and UMB's primary challenge is to whether there was a common legal interest between BMS and Equiniti, the Court concludes that BMS has made a sufficient showing that there was.  The Clerk of Court is directed to terminate ECF No. 64.  SO ORDERED.

December 14, 2023