

Pallas Partners (US) LLP
75 Rockefeller Plaza
New York, NY 10019
T: +1 (212) 970 2300
pallasllp.com

New York | London

Joshua A. Naftalis
Partner
Direct Dial: +1 (212) 970 2303
joshua.naftalis@pallasllp.com

February 21, 2024

VIA CM/ECF

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    <u>UMB Bank. N.A. v. Bristol-Myers Squibb Company</u>, No. 21 Civ. 4897 (JMF)

Dear Judge Furman:

      We write on behalf of non-party Pentwater Capital Management, L.P. ("Pentwater") in opposition to defendant Bristol-Myers Squibb Company's ("BMS") motion to compel UMB Bank, N.A. ("UMB") to produce communications over which UMB has asserted a common interest privilege with Contingent Value Rights ("CVR") investors, including Pentwater.  (Dkt. 80).  Because BMS seeks to invade a privilege that Pentwater has also asserted in response to a document subpoena served by BMS and because BMS seeks to rely on the deposition testimony of Matthew Halbower, Pentwater's founder, chief executive officer, and chief investment officer, Pentwater respectfully requests that the Court consider this letter brief.  Pentwater joins UMB's opposition letter brief, dated February 21, 2024.  (Dkt. 82).  Pentwater writes separately to amplify a few points that further show that the Court should deny BMS's motion.

      By way of background, Pentwater is an investment advisor that has over $5 billion in assets under management.  Pentwater was initially a large investor in the common stock of Celgene Corporation ("Celgene").  (Halbower Tr. 52:8-53:11).  Upon the closing of the BMS-Celgene merger, Pentwater received CVRs as consideration and subsequently acquired more of them.  (*E.g.*, Halbower Tr. 74:13-16, 76:2-8, 78:10-15, 111:17-112:11, 113:17-25, 178:3-10).  Pentwater is currently a substantial CVR holder, owning approximately 63,436,027 as of January 30, 2024.  (Halbower Tr. 224:4-5).

      To try to pierce Pentwater's common interest privilege, BMS's motion selectively and misleading quotes from the deposition transcript of Mr. Halbower and seeks to artificially separate Pentwater's efforts to replace Equiniti Trust Company ("Equiniti") with UMB as CVR trustee from the related potential for UMB to bring litigation against BMS.  (Dkt. 80, at 2-3).  Mr. Halbower made clear at his deposition that the reason why Pentwater wanted to replace Equiniti with UMB was because (a) Pentwater reasonably anticipated that it may be necessary for a new trustee to bring litigation against BMS, and (b) UMB had experience protecting CVR holder rights

through litigation. *See Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12 Civ. 5067 (JFK) (JLC), 2017 WL 4676806, at *10 (S.D.N.Y. Oct. 17, 2017) (quoting *ACE Sec. Corp. v. DB Structured Prod., Inc.*, 55 Misc. 3d 544, 561 (Sup. Ct. N.Y. Cnty. 2016)) (finding "communications [that] were needed to 'coordinate a legal strategy regarding how to enforce the rights of the [t]rust'" protected by common interest privilege).

For example:

- BMS's letter motion only cites a portion of Mr. Halbower's testimony at page 77 of the transcript and notably fails to alert the Court to the very next question and answer, in which Mr. Halbower explained that UMB's experience pursuing litigation in the CVR context was an important credential:

    Q.  You were interested in UMB Bank specifically, though, because they had pursued litigation as trustee, correct?

    A.  *[O]ne thing that UMB had done as a trustee in a prior CVR . . . was they had pursued litigation and I considered that to be a positive in their CV rather than a negative.*

    (Halbower Tr. 87:20–88:1) (emphasis added).

- Mr. Halbower also testified that Pentwater was of the view from its very first conversations with other CVR holders about replacing the trustee in late November 2020 that there was a "potential need" for a new trustee to bring litigation against BMS:

    Q.  And did you discuss potentially filing a lawsuit against Bristol-Myers Squibb?

    A.  *Yes*. We discussed that at the end of the day it's possible that Bristol-Myers Squibb did not fulfill their diligent efforts and *it might become necessary for a trustee to investigate that and potentially bring litigation . . . . It was a discussion about the potential need for a trustee to bring a lawsuit.*

    Q.  Okay. Yeah, that's more precise. So . . . you discussed potentially having a replacement trustee, in this case UMB Bank, potentially file a lawsuit against BMS, right?

    A.  *We discussed UMB, their qualifications as a new trustee, and one of their skills being that they had successfully navigated litigation in the Sanofi case, so, yes, we – we discussed those things.*

    (Halbower Tr. 108:9-109:3) (emphasis added).

- Mr. Halbower also testified that UMB, Pentwater, and other CVR holders had entered into an oral common interest agreement before December 31, 2020. (Halbower Tr. 232:23-233:3).

Accordingly, Mr. Halbower's deposition testimony shows that a primary reason that Pentwater wanted to replace Equiniti with UMB was because (a) Pentwater reasonably anticipated that it may be necessary for the CVR trustee to bring litigation against BMS, and (b) UMB was a trustee that had experience protecting CVR holder rights through litigation. The Court should thus deny BMS's motion to compel production of communications over which UMB has asserted a common interest privilege.

Respectfully submitted,

Joshua A. Naftalis

For and on behalf of Pallas Partners (US) LLP

cc: Counsel of Record (by CM/ECF)