UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UMB BANK, N.A., solely in its capacity as Trustee under the Contingent Value Rights Agreement by and between Bristol-Myers Squibb Company and Equiniti Trust Company, dated November 20, 2019, <br><br> Plaintiff, <br><br> v. <br><br> BRISTOL-MYERS SQUIBB COMPANY, <br><br> Defendant. | Case No. 1:21-cv-04897 (JMF) <br><br> **PLAINTIFF UMB BANK, N.A.'S SUPPLEMENTAL OPPOSITION TO DEFENDANT BRISTOL MYERS SQUIBB COMPANY'S MOTION TO DISMISS.** |

<u>**PLAINTIFF UMB BANK, N.A.'S SUPPLEMENTAL OPPOSITION TO DEFENDANT BRISTOL MYERS SQUIBB COMPANY'S MOTION TO DISMISS**</u>

Date:  April 29, 2024

Philippe Z. Selendy
Maria Ginzburg
Sean P. Baldwin
Joshua S. Margolin
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Tel: 212-390-9000
pselendy@selendygay.com
mginzburg@selendygay.com
sbaldwin@selendygay.com
jmargolin@selendygay.com

David A. Crichlow
Julia M. Winters
KATTEN MUCHIN & ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020
david.crichlow@katten.com
jwinters@katten.com

*Attorneys for UMB Bank, N.A., solely in its capacity as Trustee*

## INTRODUCTION

This Court asked whether the reconfirmations UMB submitted on April 17, 2024 establish standing even if the Court were to find that UMB did not otherwise have Article III standing as of the time this suit was commenced. The answer is yes. Both the Second Circuit and New York courts have consistently held that Depository Trust Company ("DTC") proxies can be obtained with retroactive effect to establish standing at the time of suit. *See, e.g.*, *Allan Appelstein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242, 245-46 (2d Cir. 2005). That moots BMS's motion to dismiss.

The beneficial holders of CVRs (the "CVR holders") have now resoundingly reconfirmed UMB's appointment as Trustee by obtaining proxies for a majority of outstanding CVRs from DTC's representative Cede & Co. as of **both** potential dates for the action to replace the Trustee (the "Reconfirmations"). As set forth in the Maria Ginzburg April 17, 2024 Declaration ("Ginzburg Decl."), UMB obtained Reconfirmations for 383,840,296 CVRs, or 51.6% of Outstanding CVRs, as of December 9, 2020, and for 385,857,617 CVRs, or 51.87% of Outstanding CVRs, as of December 18, 2020. Ginzburg Decl., ECF No. 118, ¶¶ 7-8. That number has only grown since then. As of this filing, UMB has received additional Reconfirmations for 3,445,385 CVRs as of December 9, 2020, and for 2,982,419 CVRs as of December 18, 2020, reflecting that 52.06% of the CVRs affirmatively support Reconfirmation as of December 9, and 52.27% affirmatively support Reconfirmation as of December 18, 2020.[1] *See* April 29, 2024 Declaration of Maria Ginzburg in Support of UMB's Supplemental Opposition to Bristol Myers Squibb Company's Motion to

---

[1] As discussed in UMB's Opposition to BMS's Motion to Dismiss, ECF No. 95, UMB only needed a majority as of December 9, 2020. *See* Opposition at 21-23. Nevertheless, because BMS argues that a majority was needed as of December 18, 2020, UMB secured Reconfirmations as of that date, as well.

Dismiss ("Supp. Decl."), ¶¶ 2-4. With these Reconfirmations, the Majority Holders[2] have put to bed any remaining vestige of BMS's claim that the original Instrument of Removal and Appointment (the "Instrument") appointing UMB was ineffective. *See* CVR Agreement 1.4(a), 4.10(e).[3]

BMS claims (Motion at 20; Reply at 10) that this action nevertheless must be dismissed and refiled by Equiniti. Not so. The Second Circuit has squarely held that "Article III is satisfied so long as a party with standing to prosecute the specific claim in question exists at the time the pleading is filed" and subsequently substitutes into the case. *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 386 (2d Cir. 2021). Section 1.1 of the CVR Agreement provides that the Trustee had standing to prosecute these claims at the time this action was initiated, and, following the Reconfirmations, UMB is undoubtedly the Trustee. Although procedurally unnecessary in this case since UMB is already the plaintiff, UMB now reconfirmed as Trustee could substitute in for itself under Federal Rule of Procedure 17(a).

## ARGUMENT

There is no dispute that the CVR Agreement appoints the Trustee as the party with Article III standing to assert this case. Courts uniformly have held that, where DTC authorization is

---

[2] *See* CVR Agreement 4.10(c). As of December 31, 2020, there were 743,914,518 Outstanding CVRs. Ginzburg Decl. ¶ 6 (citing ECF No. 77-25); *see also* CVR Agreement § 1.1 (defining "Outstanding" and "Majority Holders").

[3] Since December 18, 2020, when the original Instrument executed, some of the original CVR holders who executed the Instrument transferred their holdings and did not participate in the Reconfirmations. Ginzburg Decl. ¶ 9. Additional CVR holders, who also held CVRs as of December 9, 2020 and December 18, 2020, but had not joined the original Instrument, obtained proxies for their holdings and signed joinders reflecting their support for that original Instrument. *Id.* Notably, the fact that such additional CVR holders also confirm the Instrument shows that an even greater majority of CVR holders support the replacement of Equiniti with UMB as Trustee than originally had been calculated.

required to exercise a right under the terms of an agreement such as an indenture, "that authorization need not pre-date" the exercise thereof, including for the purpose of establishing standing at the time of suit. *Applestein*, 415 F.3d at 245-46; *Lovati v. Petróleos de Venezuela, S.A.*, 2021 WL 5908953, at *2 (S.D.N.Y. Dec. 14, 2021); *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 3d 587, 606-07 (S.D.N.Y. 2015); *see also Bank of New York v. BearingPoint, Inc.*, 13 Misc. 3d 1209(A) (N.Y. Sup. Ct. 2006) ("Notably, the filing by the beneficial Holders has now been retroactively ratified by the registered Holder[.]"). It is well-established that, while "[f]ederal law sets the parameters" or "ground rules" for Article III standing," state law "can supply the answers to certain antecedent questions relevant to whether those federal requirements are satisfied." *Fund Liquidation*, 991 F.3d at 385-86. The CVR Agreement, like the indentures at issue in these cases, is governed by New York law, CVR Agreement § 1.10, and the holdings of these cases compel the same result here.

Even if the *Applestein* line of cases were not applicable, and it is, the Second Circuit has held that Article III standing exists at the time of suit so long as a party had standing to bring suit at that time and the proper party later substitutes in, without unreasonable delay. *Fund Liquidation*, 991 F.3d at 386. Here, it is undisputed that there was a party with standing, namely, the Trustee acting for the CVR Holders. The only question raised by BMS's motion is *which* entity was empowered to act as Trustee—and it was UMB for all the independent reasons stated in the Opposition[4]—but , under the controlling rule of *Fund Liquidation*, that question does not threaten Article III standing.

---

[4] Because UMB has been the plaintiff from the inception of this case, there is no procedural need to substitute in UMB as Trustee today.

Thus, under both lines of authority, BMS's motion to undermine the unequivocal interest and expressed intent of the Holders should be rejected as moot.

## I.     The DTC Authorizations Retroactively Reconfirm The Trustee

The Reconfirmations put BMS's challenge to rest because it is well-established that DTC authorizations have retroactive effect, including for standing, as a matter of New York law. Contrary to BMS's assertion (Motion at 19), the fact that the CVR Agreement requires beneficial holders to sue through the Trustee does not change the analysis. The cases that allow for retroactive effect for DTC authorizations do so because the parties with injury-in-fact needed to obtain such authorization from the DTC as the legal holder under the terms of the indentures at issue.

The Second Circuit's holding in *Applestein* is directly on point. In that case, the Province of Buenos Aires offered notes pursuant to an indenture governed by New York law. *Applestein*, 415 F.3d at 243. The indenture provided that "as long as DTC . . . or its nominee is the registered owner of the . . .  Global Registered Note, it will be considered the sole owner or Holder of the Notes represented thereby for all purposes hereunder," and that only the Holder was entitled to "institute suit for the enforcement of any" payment on the note unless the Holder granted a proxy to a beneficial owner. *Id.* at 243-44 (cleaned up). The plaintiff, a beneficial holder of a note, sued Buenos Aires for failing to make interest payments. *Id.* at 243. After initiating the litigation, the plaintiff received a proxy from the DTC authorizing him to sue under the terms of the indenture. The Second Circuit rejected defendant's argument that the indenture "does not permit a beneficial owner to sue on the basis of DTC's *ex post* ratification of a suit." *Id.* at 245 (internal quotations omitted). Instead, it "affirm[ed] the district court's judgment on the ground that [the plaintiff ultimately] obtained . . . permission to sue from the registered holder." *Id.*

Similarly, in *Lovati*, plaintiffs were beneficial owners of notes issued pursuant to an indenture. 2021 WL 5908953, at *1. The defendant moved to dismiss plaintiffs' suit for payment,

claiming that because plaintiffs "did not obtain permission to sue from the registered holder of the notes before filing the complaint," plaintiffs lacked standing to sue. *Id.* The court denied the defendant's motion explaining that, (1) as beneficial holders, plaintiffs suffered an injury, and (2) even though plaintiffs "ultimately need authorization to sue from the registered holder, that authorization need not pre-date the filing of this lawsuit." *Id.* at *2.

Likewise, in *Royal Park*, plaintiffs sued HSBC Bank for its alleged failure to discharge its duties as trustee for a residential mortgage-backed securities trust. 109 F. Supp. 3d at 594. Twenty-five of the governing agreements at issue contained "Negating Clauses" that limited "the parties who may enforce" the governing agreement, permitting holders of record to do so but not certificate or note owners like the plaintiffs. *Id.* at 606-07. In explaining that "plaintiffs' lack of standing" to bring suit under these agreements "can be cured," the court held that "[a] beneficial owner who lacks standing may receive authorization to sue from the registered Holder, and that authorization may be granted ***subsequent to the filing of the lawsuit.***" *Id.* at 607 (emphasis added).

State courts in New York repeatedly have held the same. *E.g.*, *One William St. Cap. Mgmt. L.P. v. U.S. Educ. Loan Tr. IV*, 116 A.D.3d 512, 512 (1st Dep't 2014) ("[P]etitioner [beneficial holder] cured its lack of standing by adding the Depository Trust Company and Cede & Co. to this proceeding as nominal petitioners."); *Springwell Navigation Corp. v. Sanluis Corporacion, S.A.*, 81 A.D.3d 557, 558 (1st Dep't 2011) (beneficial holder plaintiff—who subsequently obtained authorization from registered holder—was "registered holder's authorized appointee," and thus the "prior lack of capacity [was] cured") (citing *Applestein*, 415 F.3d 242); *Bank of New York v. BearingPoint, Inc.*, 13 Misc. 3d 1209(A) (N.Y. Sup. Ct. 2006) ("[T]he filing by the beneficial Holders [was] retroactively ratified by the registered Holder.") (citing *Applestein*, 415 F.3d 242).

BMS wrongly contends (Motion at 19) that *Applestein* and its progeny do not support UMB's standing because in those cases the beneficial holders filed the actions whereas here UMB is the Trustee and not itself a beneficial holder. That is a distinction without difference. The CVR Agreement, like the other indentures adjudicated in the *Applestein* line of cases, sets up a contractual framework for how the beneficial holders with injury-in-fact may sue. In *Applestein*, the beneficial holders with injury-in-fact had to obtain proxies from the registered holder. Here, the CVR holders with injury-in-fact had to sue through a Trustee, CVR Agreement §§ 8.4, 8.6, and, according to BMS, they needed proxies from the registered Holder to replace the Trustee. If DTC authorization were contractually necessary to suit,[5] the fact that the CVR holders have now obtained such authorization retroactively satisfies the requirement and resolves the issue under New York contract law, just like in *Applestein*, *Lovati*, and *Royal Park*. *See Applestein*, 415 F.3d at 245-46; *Lovati*, 2021 WL 5908953, at *2; *Royal Park Invs. SA/NV*, 109 F. Supp. 3d at 606-08. Thus, UMB has remedied what BMS asserts to be the "dispositive" purported defect in UMB's appointment. *See* Reply at 1.

Thus, the Reconfirmations establish UMB as the indisputable successor Trustee as of December 9 and December 18, 2020, and also today.[6]

---

[5] As the Opposition proved UMB's appointment as Trustee was proper on multiple independent grounds, UMB disputes that such DTC authorization was necessary. *See* Opposition at 12-21.

[6] The Reconfirmations further show that BMS's equitable arguments (Reply at 2, 5) related to the Prepaid Forward Agreement ("PPFA") are utterly meritless. A majority of CVR holders continues to support UMB as Trustee. Indeed, the will of the CVR holders was first made clear when they acted to appoint UMB as of December 9, 2020 with the Instrument. On February 26, 2021, UMB disclosed it was entering the PPFA and invited all accredited investors to participate in funding this litigation. Supp. Decl. Ex. 3. More than 450 CVR holders joined the PPFA, representing over 60% of outstanding CVRs. Supp. Decl. Ex. 4. Now, three years later, a majority of Holders has reconfirmed the Trustee. BMS's protests seeking to undermine the CVR holders' rights must end.

## II.      There Is No Reason To Restart This Case

BMS argues this suit should be dismissed on the purported ground that UMB was not the Trustee at the time of the filing of the Complaint and is a "nullity." Motion at 20. Both the antecedent and conclusion of BMS's argument are wrong. The Second Circuit has expressly rejected the "so called 'nullity-doctrine,'" renouncing the passages BMS relies on as *dicta*. *Fund Liquidation*, 991 F.3d at 386 ("[N]either Article III nor our Court's past precedent requires us to adopt this doctrine."). Rather, the Second Circuit has explained that

> **Article III is satisfied so long as a party with standing to prosecute the specific claim in question <u>exists</u> at the time the pleading is filed.**  If that party (the real party in interest) is not named in the complaint, then it must ratify, join, or be substituted into the action within a reasonable time. Only if the real party in interest either fails to materialize or lacks standing itself should the case be dismissed for want of subject-matter jurisdiction.

*Id.* (emphasis added). BMS has no answer.

UMB has been reconfirmed as the real party in interest. The "real party in interest" is the party with the right to enforce the claims. *Fund Liquidation*, 991 F.3d at 381; *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 48 (2d Cir. 2005). In *Fund Liquidation*, the court permitted the "real party in interest" to substitute into the action in place of two dissolved and legally non-existent plaintiff funds, without dismissing and requiring the real party in interest "to initiat[e] a new action from scratch." 991 F.3d at 375.

Here, it is undisputed that the party with the right to sue BMS for its failure to exercise diligent efforts has always been the Trustee. *See* CVR Agreement §§ 8.4, 8.6. Indeed BMS admits as much: it expressly asserts that because "Equiniti was never removed, there is 'no vacancy in the office of Trustee.'" (Reply at 10). The CVR Agreement defines the Trustee as Equiniti "until a successor Trustee shall have become such pursuant to . . . this CVR Agreement, and thereafter

'Trustee' shall mean successor Trustee." CVR Agreement § 1.1. While BMS is wrong on the facts as to which entity is Trustee, it is bound by its admission that ***there has always been a Trustee to act for the Holders***—and thus a "party with standing to prosecute" BMS's breaches of the CVR Agreement at the time this suit was commenced. *Fund Liquidation*, 991 F.3d at 386.

Now that the CVR holders have secured Reconfirmations as of both December 9 and December 18, 2020, UMB indisputably is and was (at a minimum, by retroactive confirmation), at inception of the case, the Trustee. Because UMB has always been the Trustee, for the grounds stated in the Opposition, there is no need for it to "ratify, join, or be substituted" into this litigation under Federal Rule of Civil Procedure 17(a)(3), or to amend the complaint under Federal Rule of Civil Procedure 15(d) solely to plead UMB as the now-reconfirmed successor Trustee; however, if the Court deems that proper, UMB respectfully requests leave to do so.

*        *        *

Maintaining this action and preserving three years of litigation work by this Court and the parties is obviously the correct course, and in line with the practical realities of concern to the Second Circuit. *See Fund Liquidation*, 991 F.3d at 381 ("[I]t is plainly the more practical approach to permit parties to circumvent the needless formality and expense of instituting a new action simply to correct a technical error in the original pleading's caption."). As the Second Circuit held that even non-existent entities could suffice as placeholders until substitution of the real party in interest, then certainly UMB, which already had been accepted as successor Trustee by all of (1) a majority of the CVR holders, (2) its predecessor Trustee Equiniti, and (3) BMS itself, as confirmed in its public statements to Holders and its SEC filings (Opposition at 2, 11, 17), should be permitted to continue to maintain this action as Plaintiff solely on behalf of the interests of the CVR holders.

## **CONCLUSION**

For the reasons set forth above and in UMB's Opposition to BMS's Motion to Dismiss, ECF No. 95, UMB respectfully requests that BMS's Motion to Dismiss be denied in its entirety and UMB be awarded costs, including for the costs of securing the Reconfirmations.

Dated:   April 29, 2024

Respectfully submitted,

By: _____

Philippe Z. Selendy
Maria Ginzburg
Sean P. Baldwin
Joshua S. Margolin
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Tel: 212-390-9000
pselendy@selendygay.com
mginzburg@selendygay.com
sbaldwin@selendygay.com
jmargolin@selendygay.com

David A. Crichlow
Julia M. Winters
KATTEN MUCHIN & ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020
david.crichlow@katten.com
jwinters@katten.com

*Attorneys for UMB Bank, N.A., solely in its capacity as Trustee*