Selendy Gay PLLC
1290 Avenue of the Americas
New York NY 10104
212.390.9000

Philippe Z. Selendy
Partner
212.390.9002
pselendy@selendygay.com

May 9, 2024

**Via ECF**

Hon. Jesse M. Furman
United States District Court for the
Southern District of New York
40 Foley Square
New York, NY 10007

**Re:** *UMB Bank, N.A. v. Bristol Myers Squibb Company*, No. 21 Civ. 4897 (JMF)

Dear Judge Furman:

Plaintiff UMB Bank, N.A. ("UMB") writes solely in its capacity as Trustee under the Contingent Value Rights Agreement ("CVR Agreement") to request leave to file a five-page reply to address five arguments that BMS raises in its Supplemental Brief, ECF 130 ("Supp.").

**First**, BMS's argument (Supp. 8) that the Reconfirmations are ineffective because CVR Agreement § 1.4(a) provides that "[n]o such vote or consent shall be valid or effective for more than one hundred twenty (120) days after such record date" misses the fundamental point of the Reconfirmations. BMS ignores that DTC authorization can be secured after-the-fact with retroactive effect. *See, e.g.*, *Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242, 245-46 (2d Cir. 2005). BMS cites no authority to the contrary. The Reconfirmations therefore are effective as of December 9 and 18, 2020.

**Second**, BMS asserts (Supp. 8), again without authority, that because portions of the CVR Agreement terminated on January 1, 2021, retroactive authorization is unavailable. BMS once more ignores New York law, which holds that the Reconfirmations have retroactive effect. *See, e.g.*, *Applestein*, 415 F.3d at 245-46. In addition, BMS cannot benefit from its Diligent Efforts breach to trigger an early termination of the CVR Agreement, and then weaponize that termination to block CVR holders' right to appoint a successor Trustee to remedy that breach. *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 439020, at *5 (S.D.N.Y. Feb. 3, 2016). Just as in the first-failed motion to dismiss, the Court should reject BMS's second attempt to use contract termination arguments "to produce [a] perverse result." ECF 33, at 4; *see* UMB Opposition, ECF No. 97, at 1-5.

**Third**, BMS's argument (Supp. 9-10) concerning purported "discrepancies" in UMB's "arithmetic" is a smokescreen. There is no question that ***all*** the Reconfirmations

Hon. Judge Furman
May 9, 2024

were obtained by CVR holders who held shares on December 9 and 18, 2020, ECF 118, at ¶ 9, and thus there is zero reason to subtract the Cede & Co proxies obtained by those who joined the Instrument to reconfirm UMB. BMS's contention that the same authorization is required contradicts its own argument that the relevant authorization is from the majority of registered Holders. Cede & Co, has been the one and only registered Holder for 99% of the CVRs, and is thus the same Holder that would have given authority in December 2020, and has done so now retroactively.

**Fourth**, BMS attempts to sidestep the Second Circuit's clear holding with respect to Article III standing in *Fund Liquidation Holdings LLC v. Bank of America Corporation*, 991 F.3d 370 (2d Cir. 2021) by pointing to this Court's decision in *In re AXA Equitable Life Ins. Co. COI Litigation*, 2022 WL 3018104 (S.D.N.Y. Mar. 31, 2022). But *AXA* did not reject the Second Circuit's ruling that "Article III is satisfied so long as a party with standing to prosecute the specific claim in question exists at the time the pleading is filed." *Fund Liquidation*, 991 F.3d at 386. Further, *AXA* supports UMB's position. There, this Court held that a securities intermediary did not have standing to bring class claims that should have been asserted directly, *AXA*, 2022 WL 3018104, at *4-5, which differs from this case where the injured CVR holders had to proceed through the Trustee. But despite the representative's lack of standing, the Court's subsequent decision, which BMS did not cite, allowed the proper class representatives to substitute in. 2023 WL 199284, at *3-4 (S.D.N.Y. Jan. 17, 2023). Finally, if authorizations and substitution were required here (which they are not), as in *AXA*, the absence of DTC authorization was at most an "understandable mistake" and there can be no prejudice to BMS as it would not alter the contours of the case. *See AXA*, 2023 WL 199284, at *3.

**Lastly**, BMS's accusation that UMB obtained the Reconfirmations in secret and delayed the motion is meritless. UMB disclosed that obtaining retroactive authorization was possible in its first letter to the Court on December 11, 2023, ECF 65, and again in its Opposition on March 15, 2024. Immediately upon receiving Reconfirmations from the Majority Holder, UMB submitted this new evidence to the Court and to BMS on April 17, 2024. ECF 116. BMS egregiously misrepresents (Supp. 6) the deposition testimony of Pentwater Capital Management LP's ("Pentwater") representative in aid of its baseless accusations. BMS submits only a truncated snippet of the deposition transcript, omitting the very question that set up the context. The full record shows that BMS never asked about Pentwater's recent efforts to seek DTC authorization retroactively and instead asked whether Pentwater had reached out to the DTC during the Trustee replacement process in *December 2020*. ECF No. 133-1. Unsurprisingly, Pentwater accurately testified it had not.

Should the Court not grant UMB's request for a reply brief, UMB respectfully requests that the Court accept this letter as its reply.

Sincerely,

Philippe Z. Selendy